IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

PEDRO I. LOREDO,                           '
TDCJ-CID NO. 1013158,                      '
         Petitioner,              '
v.                                         '          CIVIL ACTION H-06-2138
                                           '
NATHANIEL QUARTERMAN,                      '
         Respondent.              '

OPINION ON DISMISSAL

       Petitioner Pedro I. Loredo, an inmate incarcerated in the Texas Department of Criminal Justice B Correctional Institutions Division (ATDCJ-CID@), has filed a petition for a writ of habeas corpus under 28 U.S.C. ' 2254 challenging his arson and felony murder convictions.  (Docket Entry No.1).  Respondent has filed a motion for summary judgment, arguing that petitioner is not entitled to habeas corpus relief under ' 2254.  (Docket Entry No.10).  Petitioner has filed a response to respondent=s motion. (Docket Entry No.13).  After considering all the pleadings, motions, and the response, the state court records, and the applicable law, the Court will grant respondent=s motion for summary judgment and deny petitioner federal habeas relief.

I. FACTUAL AND PROCEDURAL HISTORY

       A Texas grand jury indicted petitioner of felony murder in cause number 836440 and arson in cause number 846889.  *Loredo v. State*, No.14-00-01353-CR, Clerk=s Record at 7; No.14-00-01354-CR, Clerk=s Record at 2.  Petitioner was tried before a jury in the 232nd District Court of Harris County, Texas.  Jurors heard testimony of the following, as summarized by the Fourteenth Court of Appeals for the State of Texas (AFourteenth Court@) in its Opinion entered February 10, 2004:

In February 2000, appellant, his brother, Juan Torres, and Allen Davis worked at a McDonald=s restaurant. Appellant and Edson Garza, the night manager for McDonald=s, schemed to steal the weekend=s receipts from the safe in McDonald=s. On Sunday, February 13, 2000, Garza gave his keys to appellant so that appellant could enter the restaurant after it closed. The restaurant had two safes, one large safe and a smaller Adrop safe,@ which was welded onto the large safe. Garza=s keys would open the large safe, but a computerized lock would report who had opened the safe. Garza reported to appellant that the drop safe contained the receipts for Friday, Saturday, and Sunday and could contain as much as $18,000. Appellant, Torres, and Davis decided to attempt to break into the drop safe. The evening before the break-in, appellant purchased a gas torch and propane and oxygen tanks to melt the locks of the safes.

On February 13, 2000, appellant, Torres, and Davis picked up Garza=s keys, bought a crowbar and a hammer, and drove to McDonald=s. They entered McDonald=s about 1:30 a.m. with Davis carrying a backpack containing the torch and gas cylinders, a crowbar, and a hammer. To prevent fingerprints, the trio put tape on their fingertips, but the tape fell off shortly after they entered McDonald=s.

The McDonald=s office had a tile floor and three tiled walls, and an office in the northeast corner with wooden cabinets above a desk that had wooden drawers and a formica top. The cabinets contained notebooks, work manuals, and other papers. A backpack was hanging on the wall beside the desk. The two safes were in the office. Appellant attempted to pry open the drop safe with the crow bar. After approximately twenty minutes, he realized the crowbar would not work, so he attempted to melt the lock with the propane torch. In his statement to police, appellant said, he did not know whether the papers or wood in the office caught fire while he was attempting to melt the lock. After approximately twenty-five futile minutes with the torch, appellant told his brother, Juan Torres, to purchase bolt cutters at a nearby discount store. Torres made the purchase and returned to the McDonald=s. Appellant then broke the lock on the drop safe with the bolt cutters, but discovered another safe inside the drop safe. Appellant eventually abandoned the smaller safe and told Davis to take the television from the dining room. When Davis reported the television was anchored to the wall, Davis testified that the trio abandoned their burglary attempt and began to Acover their tracks.@

2

> According to Davis=s testimony at trial, the burglars wiped down
> the surfaces in the office to Acover@ the fingerprints.  In his
> statement to the police, Davis said appellant and Torres were
> talking about starting a fire.  At trial, Davis testified Torres
> Awanted to just damage something.@  Davis testified appellant, in
> a further attempt to Acover their tracks,@ went outside and broke
> the drive-through window so that investigators would not know
> they had keys.  Before the trio departed the scene, a fire was
> intentionally started inside the McDonald=s.  As a result, the
> restaurant began to burn and firefighters were called.  Upon
> arriving at the scene, two firefighters entered the restaurant to
> ensure no one was trapped inside.  While searching the restaurant,
> both firefighters suffered asphyxia and died.
>
> Appellant, Davis, and Torres were charged with felony murder and
> arson and were tried together.  The jury found all three guilty of
> felony murder and arson.

*Loredo v. State*, 130 S.W.3d 275, 277-78 (Tex. App.BHouston [14th Dist.] 2004, pet. ref=d).

The jury assessed punishment at thirty-five years confinement in TDCJ-CID and a fine of

$10,000 in each cause.  *Loredo v. State*, Clerk=s Record, Cause No. 846889 at 79; Clerk=s

Record, Cause No. 836440 at 84.

On direct appeal, petitioner sought relief on grounds that (1) the evidence was

insufficient to support his conviction for felony murder and arson; and, (2) the trial court erred in

its instructions to the jury and in denying his motion to suppress.  *Loredo*, 130 S.W.3d at 277.

The Fourteenth Court affirmed the state district court=s judgment.  *Id.*  Petitioner filed a petition

for discretionary review (APDR@), seeking relief on the alleged error in denying his motion to

suppress.  *Loredo v. State*, Appellant=s PDR, No.426-04.  The Texas Court of Criminal Appeals

refused the PDR.  (Docket Entry No.1).

On November 30, 2005, petitioner filed a state habeas application in each cause,

seeking state habeas relief on the following grounds:

1.     The Fourteenth Court erred in affirming the state district court=s judgment with respect to petitioner=s claims regarding the suppression of evidence;

2.     He was denied the effective assistance of counsel at trial;

3.     He was denied due process of law because the evidence was insufficient to support his conviction for felony murder;

4.     He was denied due process and a fair trial because the prosecutor violated the state district court=s order regarding the admissibility of expert testimony; and,

5.     He was denied equal protection and due process because the state district court denied his motion to change venue.

*Ex parte Loredo*, Application No.836440-A, at 2-11; *Ex parte Loredo*, Application No.846889-A, at 2-11.  The state district court, sitting in habeas, entered AFindings of Facts; Conclusions of Law and Order,@ recommending that relief be denied.  *Id.* at 72-75, respectively.  The Texas Court of Criminal Appeals denied each application without written order on the trial court=s findings without a hearing.  *Ex parte Loredo*, Application No.63,613-01 at cover (felony murder), Application No.63,613-02 at cover (arson).

In the pending petition, petitioner seeks federal habeas relief on the following grounds:

1.     There was no evidence, or insufficient evidence to support his convictions for arson and felony murder;

2.     He was denied the effective assistance of trial counsel because his trial counsel failed to (a) object to the application of the felony murder rule to petitioner=s case; (b) argue in closing statement Athat there had been no felony murder because the decedent did not die >in the course of and in furtherance= of the burglary of a building@; (c) object to inadmissible evidence; and, (d) be present during critical stages of the prosecution.

4

3. He was denied due process of law because the jury instructions allowed the jury to find petitioner guilty of arson Afor conduct that did not constitute the offense of arson@;

4. He was denied due process and a fair trial because the prosecutor knowingly violated the court=s order and presented inadmissible evidence;

5. He was denied a fair trial before an impartial jury because the state district court denied his motion to change venue; and,

6. The state district court erred in admitting petitioner=s illegally obtained confession to three extraneous offenses during the punishment phase of trial.

(Docket Entry No.1).   Respondent filed a motion for summary judgment, arguing that petitioner=s claims fail as a matter of law, (Docket Entry No.10), to which petitioner filed a response.  (Docket Entry No.13).

## II. STANDARD OF REVIEW

In deciding a motion for summary judgment, a court must determine whether Athe pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.@  FED. R. CIV. P. 56(c).  The moving party bears the initial burden of informing the court of the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial.  *Taita Chem. Co. v. Westlake Styrene Corp.,* 246 F.3d 377, 385 (5th Cir. 2001); *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992).  Thereafter, Athe burden shifts to the nonmoving party to show with >significant probative evidence= that there exists a genuine issue of material fact.@  *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).  The Court may grant summary judgment on any ground supported

by the record, even if the ground is not raised by the movant.  *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

Petitioner=s federal habeas petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AAEDPA@), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  *Lindh v. Murphy*, 521 U.S. 320 (1997).  The AEDPA, codified as amended at 28 U.S.C. ' 2254(d), Asubstantially restricts the scope of federal review of state criminal court proceedings.@  *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).  Specifically, the AEDPA has Amodified a federal habeas court=s role in reviewing state prisoner applications in order to prevent federal habeas >retrials= and to ensure that state-court convictions are given effect to the extent possible under the law.@  *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Under the AEDPA, a federal habeas petition on behalf of a person in custody pursuant to a state court judgment shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court.  28 U.S.C. ' 2254(d)(1),(2); *Williams v. Taylor*, 529 U.S. 362, 411-13 (2000); *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  Absent a direct conflict with a Supreme Court decision, a federal district court may grant the writ Aonly if the state court >unreasonably applies [clearly established federal law, as determined by the Supreme Court] to the facts of the prisoner=s case, . . . [or makes] an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.=  The standard is one of objective reasonableness.@  *Montoya v. Johnson*, 226 F.3d 399, 403-04 (5th Cir. 2000) (quoting *Williams*,

529 U.S. at 412-13 (O=Connor, J., concurring).   Findings of fact made by state courts are presumed correct on federal habeas review, and petitioner bears the burden to rebut the findings with clear and convincing evidence.  28 U.S.C. ' 2254(e)(1).

The petitioner retains the burden to prove that he is entitled to habeas corpus relief.  *Williams v. Taylor*, 529 U.S. 362 (2000).  In this case, petitioner presented claims in a petition for discretionary review and in a state habeas corpus application, which the Texas Court of Criminal Appeals denied without written order.  As a matter of law, a denial of relief by the Court of Criminal Appeals serves as a denial of relief on the merits of a claim.  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir.) (citing *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)).  Therefore, only those claims properly raised by petitioner on a petition for discretionary review or in a state application for habeas corpus relief have been adjudicated on the merits by the state courts.

While Rule 56 of the Federal Rules regarding summary judgment applies generally ≫with equal force in the context of habeas corpus cases,@  *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000), it applies only to the extent that it does not conflict with the habeas rules.  *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002) (citing Rule 11 of the Rules Governing Section 554 Cases in District Courts), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).  Therefore, section 2254(e)(1), which mandates that findings of fact made by a state court are presumed correct, overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the non-moving party.  *Id.*  Unless the petitioner can ≫rebut[] the presumption of correctness by clear and convincing evidence@ as to the state court=s findings of fact, those findings must be accepted as correct.  *Id.*

7

Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519 (1972); *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999). Thus, *pro se* pleadings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them. *Haines*, 404 U.S. at 521. Nevertheless, Athe notice afforded by the Rules of Civil Procedure and the local rules@ is considered Asufficient@ to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

## III. ANALYSIS

### A. Procedural Default

Respondent moves for summary judgment on petitioner=s claims challenging the state district court=s jury instruction on arson and petitioner=s challenge to the sufficiency of the evidence to support his arson conviction. Respondent maintains that petitioner did not exhaust such claims and this Court, therefore, is procedurally barred from reviewing them. (Docket Entry No.10). Respondent also moves for summary judgment on petitioner=s insufficiency challenge to his felony murder conviction and to his claims regarding the prosecutorial misconduct and the denial of a motion to change venue. (*Id.*). Respondent maintains that the state habeas court found that petitioner defaulted on both claims by failing to bring them on direct appeal and this Court is now precluded from reviewing such claims because of a clearly established state rule. (*Id.*).

Procedural default occurs where (1) a state court clearly and expressly bases its dismissal of a claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, or (2) the petitioner fails to exhaust all available state remedies, and the state court to which he would be required to petition would now find the

claims procedurally barred.  *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).  In either instance, the petitioner is deemed to have forfeited his federal habeas claim.  *O=Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  Such procedural defaults only bar federal habeas review, however, when the state procedural rule that forms the basis for procedural default was Afirmly established and regularly followed@ at the time it was applied to preclude state judicial review of the merits of a federal constitutional claim.  *Ford v. Georgia*, 498 U.S. 411, 424 (1991).

1. Exhaustion of State Remedies

Under the AEDPA, a petitioner Amust exhaust all available state remedies before he may obtain federal habeas corpus relief.@  *Sones v. Hargett*, 61 F.3d 410, 414 (5th Cir. 1995).  To exhaust  a claim under 28 U.S.C. ' 2254(b)(1) and (c) of the AEDPA, a petitioner must have presented the habeas corpus claim fairly to the state=s highest court before he may bring it to federal court.  *Castille v. Peoples*, 489 U.S. 346 (1989); *Fisher v. State*, 169 F.3d 295, 302 (5th Cir. 1999).

In the pending federal petition, petitioner maintains that he was denied due process because the state district court=s jury instructions allowed jurors to find him guilty of arson Afor conduct that did not constitute the offense of arson.@  (Docket Entry No.1).  Petitioner indicates in his original petition that he did not present this claim to the Texas Court of Criminal Appeals.  (*Id.*).  However, in his response to the motion for summary judgment, petitioner claims that he exhausted the jury instruction claim on direct appeal.  (Docket Entry No.13).  The record reflects that petitioner complained about the jury instruction on direct appeal to the Fourteenth Court of Appeals but he did not raise the issue in his PDR; therefore, petitioner has not presented the jury instruction to the State=s highest criminal court.  Accordingly, his jury instruction claim is unexhausted.

Petitioner did not challenge the sufficiency of the evidence with respect to his arson conviction in his PDR or state habeas application.  Therefore, he did not exhaust this claim in state court.

Texas prohibits successive writs challenging the same conviction except in narrow circumstances.  TEX. CODE CRIM. PROC. ANN. art. 11.07, ' 4(a) (Vernon 2005).  The Texas Court of Criminal Appeals will not consider the merits or grant relief on a subsequent habeas application unless the application contains sufficient specific facts establishing the following:

>   (1)   the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application; or

>   (2)   by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt.

*Id.*  The Texas Court of Criminal Appeals applies its abuse of the writ doctrine regularly and strictly.  *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995) (per curiam).

Petitioner does not state specific facts to show that the jury instruction claim in the pending petition could not have been raised in his state habeas application or that his evidentiary challenge to his arson conviction could not have been raised in his PDR or a state habeas application.  Furthermore, petitioner does not allege specific facts that would establish that he is innocent in any of his pleadings.  Therefore, petitioner=s unexhausted jury instruction claim and his evidentiary challenge do not fit within the exceptions to the successive writ statute and would be procedurally defaulted in state court.  *Coleman*, 501 U.S. at 735 n.1.  Such a bar

precludes this Court from reviewing petitioner=s claims absent a showing of cause for the default and actual prejudice attributable to the default.  *Id.* at 750.

Petitioner has been given notice through respondent=s motion for summary judgment that the Court would consider a dismissal of claims under the procedural default doctrine and has been given an opportunity to respond with any argument he may have opposing dismissal in a response to the motion for summary judgment.  *See Magouirk v. Phillips*, 144 F.3d 348, 359 (5th Cir. 1998).   Although petitioner filed a response to the motion for summary judgment, he does not address the default, the cause of the default, or prejudice resulting from the default in the response with respect to the jury instruction claim or insufficiency challenge to his arson conviction.  (Docket Entry No.13).  Accordingly, petitioner=s claim that he was denied due process of law because the jury instructions allowed the jury to find him guilty of arson Afor conduct that did not constitute the offense of arson@ and his evidentiary challenge to his arson conviction are procedurally barred from federal habeas review.

### 2. State Procedural Rule

Federal review of a claim is procedurally barred if the last state court to consider the claim clearly based its denial of relief on procedural default.  *Ylst v. Nunnemaker*, 501 U.S. 797, 802-04, (1991).  The federal courts recognize Texas=s procedural default rule concerning the requirements that record claims must be raised on direct appeal.  *Aguilar v. Dretke*, 428 F.3d 526, 535 (5th Cir. 2005), *cert. denied*, 126 S.Ct. 2059 (2006).

Petitioner contends that there was no evidence or insufficient evidence to support his felony murder conviction.  (Docket Entry No.1).  Petitioner did not challenge the sufficiency of the evidence to support his murder conviction in his PDR, although he complained of the same in his state habeas application and on direct appeal to the Fourteenth Court of Appeals.

The state habeas court relied upon *Ex parte McLain*, 869 S.W.2d 349, 350 (Tex. Crim. App. 1994), and recommended that state habeas relief be denied because Aapplicant=s challenge to the sufficiency of the evidence is not cognizable in post-conviction habeas proceedings.@  *Ex parte Loredo*, Application No. 63,613-01 at 73; Application No. 63,613-02 at 73.  Alternatively, the state habeas court cited *Ex parte Acosta*, 672 S.W.2d 470, 472 (Tex. Crim. App. 1984) and found that petitioner=s challenge to the sufficiency of the evidence was raised on direct appeal and rejected by the Court of Appeals; therefore, it need not be reconsidered on habeas.  *Id.*

Petitioner also contends that he was denied due process and a fair trial because the prosecutor knowingly violated a court order and presented inadmissible expert testimony. (Docket Entry No.1).  Petitioner further contends that he was denied a fair trial before an impartial jury because the state district court denied his motion to change venue.  (*Id.*).  Citing *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1998), the state habeas court found these claims were procedurally barred because petitioner failed to raise the claims on direct appeal.  *Ex parte Loredo*, Application No. 63,613-01 at 73-74; Application No. 63,613-02 at 73-74.

These findings by the state habeas court are the last reasoned opinion to rest judgment on the procedural default.  Accordingly, petitioner=s sufficiency-of-the-evidence claim, his prosecutorial misconduct claim, and his change of venue claim are barred under the doctrine of procedural default unless the petition can show that he fits within an exception to that rule.

The United States Supreme Court has held that Athe existence of cause for procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel=s efforts to comply with the State=s procedural rule.@  *Coleman*, 501 U.S. at 753.  AExamples of external impediments include active

government interference or the reasonable unavailability of the factual or legal basis for the claim.@  *Rodriguez v. Johnson*, 104 F.3d 694, 697 (5th Cir. 1997).  Actual prejudice requires a showing that, based on the success of the underlying defaulted claim, the result of the proceeding would somehow have been different.  *Barrientes v. Johnson*, 221 F.3d 741, 769 (5th Cir. 2000).  In this case, petitioner contends that he will suffer a miscarriage of justice if this Court fails to consider all claims included in the petition.  (Docket Entry No.13).

To satisfy the Amiscarriage of justice@ or Aactual innocence@ exception to the procedural bar rule, Athe petitioner must support his allegations with new, reliable evidence that was not presented at trial and show that it was >more likely than not that no reasonable juror would have convicted him in the light of the new evidence.=@  *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir.1999) (quoting *Schlup v. Delo*, 513 U.S. 298, 321 (1995)).  AExamples of new, reliable evidence that may establish factual innocence include exculpatory scientific evidence, credible declarations of guilt by another, trustworthy eyewitness accounts, and certain physical evidence.@  *Id.*  The Aactual innocence standard is >by no means equivalent to the standard of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which governs claims of insufficient evidence.@  *House v. Bell*, 126 S.Ct. 2064, 2078 (2006).  An actual innocence claim involves evidence the trial jury did not have before it; therefore, Athe inquiry required the federal court to assess how reasonable jurors would react to the overall, newly supplemented record.@  *Id.*

Petitioner, however, presents no new evidence.  Instead, petitioner argues issues raised in the pending petition and reviews evidence presented at trial.  (Docket Entries No.3, No.13).  Because plaintiff=s pleadings do not demonstrate either cause and actual prejudice nor factual innocence, he fails to overcome the procedural bar.  Accordingly, petitioner=s claims

regarding the insufficiency of the evidence, jury instructions, inadmissible expert testimony, and a change of venue are subject to dismissal.

<u>B. Ineffective Assistance of Counsel at Trial</u>

Petitioner contends that he was deprived of the effective assistance of counsel at trial.  (Docket Entry No.1).   The state habeas courts found that petitioner failed to allege sufficient facts to show that he received constitutionally ineffective assistance during the course of his trial.  *Ex parte Loredo*, Application No.63,613-01 at 72; No.63,613-02 at 72.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to effective assistance of counsel.  U.S. CONST. amend. VI.   A federal habeas corpus petitioner=s claim that he was denied effective assistance of trial counsel is measured by the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail on an ineffective assistance of counsel claim, petitioner must establish that his counsel=s performance was deficient and that the deficiency prejudiced his defense.  *Ogan v. Cockrell*, 297 F.3d 349, 360 (5th Cir. 2002) (citing *Strickland*, 466 U.S. at 692).   The failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.   *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

Counsel=s performance is deficient when the representation falls below an objective standard of reasonableness.  *Ogan*, 297 F.3d at 360.  Judicial scrutiny of counsel=s performance must be Ahighly deferential,@ indulging in a Astrong presumption@ that Atrial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy.@  *West v. Johnson*,  92 F.3d 1385, 1400 (5th Cir. 1996).  To overcome this presumption, a petitioner Amust identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.@  *Wilkerson v. Collins*, 950 F.2d

1054, 1065 (5th Cir. 1993).  Mere Aerror by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.@  *Strickland*, 466 U.S. at 687-90.  A deficiency in counsel=s performance, standing alone, does not equal ineffective assistance of counsel if no actual prejudice is demonstrated.

Counsel=s deficient performance results in actual prejudice when a reasonable probability exists Athat, but for counsel's unprofessional errors, the result of the proceeding would have been different.@  *Strickland*, 466 U.S. at 694.  AA reasonable probability is a probability sufficient to undermine confidence in the outcome.@  *Id.*  Confidence in the outcome of the trial is undermined when counsel=s deficient performance renders Athe result of the trial unreliable or the proceeding fundamentally unfair.@  *Pratt v. Cain*, 142 F.3d 226, 232 (5th Cir. 1998) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)).  AUnreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him.@  *Pratt*, 142 F.3d at 232 (quoting *Lockhart*, 506 U.S. at 372).

A claim of ineffective assistance of counsel presents a mixed question of law and fact.  *Valdez v. Cockrell*, 274 F.3d 941, 946 (5th Cir. 2001).  Because petitioner=s ineffective-assistance claims were previously considered and rejected on state habeas corpus review, the state court=s decision on those claims will be overturned only if it is Acontrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.@  28 U.S.C. ' 2254(d)(1).

<u>1. Application of Felony Murder Rule</u>

Petitioner contends trial counsel Ricardo Rodriguez rendered ineffective assistance of counsel by failing to object to the misapplication of the felony murder rule to petitioner=s case and to argue the same in his closing statement.  (Docket Entries No.1, No.3).

### a. Failure to Object

Petitioner maintains he should not have been charged with felony murder because the firefighters did not die during the commission of the underlying felony, *i.e.*, the burglary of a building.  (Docket Entries No.1, No.3).  He argues that the offense of burglary ended when he and his accomplices left the McDonald=s restaurant approximately an hour before the firefighters died in the inferno, therefore, the firefighters did not die while in the course of or furtherance of the commission and attempted commission of burglary of a building.  (Docket Entry No.13 at 5).  For this reason, petitioner maintains that Attorney Rodriguez Ashould have leveled a proper objection to prevent Petitioner from being tried for felony murder.@  (*Id.* at 3).

The state habeas courts found that petitioner Afailed to overcome the presumption that trial counsel=s decision not to object was made in the exercise of reasonable professional judgment, and the applicant fails to meet his burden in showing that his attorney was ineffective for failing to object.@  *Ex parte Loredo*, Application No.63,613-01 at 73.  The law and the facts of this case support the findings of the state habeas courts.

Felony murder is an unintentional murder committed in the course of committing a felony.  *Threadgill v. State*, 146 S.W.3d 654, 665 (Tex. Crim. App. 2004); *Lawson v. State*, 64 S.W.3d 396, 401 (Tex. Crim. App. 2001) (Cochran, J., concurring) (discussing history of felony-murder rule); *Rodriguez v. State*, 953 S.W.2d 342, 345-54 (Tex. App.BAustin 1997, pet. ref=d) (discussing felony murder rule at common law, under Texas statutory law and under the Texas Penal Code).  AThe principle behind the common law felony murder rule is this: When you

16

embark upon an inherently dangerous criminal project, you are responsible for the deadly consequences that result from that felonious conduct.@ *Lawson*, 64 S.W.3d at 398.  In Section 19.02(b)(3) of the Texas Penal Code, the Texas Legislature set out the State=s felony murder rule in two ways.[1]  *Id*. at 399.  First, with the exception of manslaughter, the statute requires that regardless of the specific underlying felony, the defendant must commit an act that is Aclearly dangerous to human life.@  *Id.*  In other words, the State must prove that a specific actor engaging in certain felonious conduct, Adid some act that was clearly dangerous.@  *Id.*  Second, the defendant must commit an act that is clearly dangerous to human life and it must be that specific act which causes the victim=s death.  *Id*. at 399-400.  The State must prove that *but for* the dangerous act, the deceased would not have died.  The death must be the natural and probable consequence of the defendant=s dangerous conduct.@  *Id*. at 400 (emphasis in original) (footnotes and citations omitted).

The statute does not require that the decedent die during the course of and in furtherance of the underlying felony.  The statute requires that the actor=s dangerous conduct, which was committed during the course of the underlying felony, be the proximate cause of the decedent=s death.  *Id*. at 400 n. 18.  As it pertains to the facts of case and as alleged in the indictment, the State was required to prove that petitioner=s dangerous act of starting a fire in the McDonald=s restaurant or the dangerous act of fleeing the restaurant without extinguishing the fire during the course of and in furtherance of the commission or attempt to burgle the McDonald=s restaurant was the proximate cause of the firefighter=s death.  *See Loredo v. State*,

---

[1]   Specifically, state law provides that a person commits felony murder if he. . . Acommits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.@  TEX. PENAL CODE ANN. ' 19.02(b)(3) (Vernon 2003).

14-00-01353-CR, Clerk=s Record at 7.  The failure of petitioner=s trial counsel to object to the application of section 19.02(b)(3) of the Texas Penal Code on the ground that the decedent did not die during the course of the burglary is without legal support under state law and therefore, would amount to a frivolous objection.  The failure to assert a meritless objection cannot be the ground for a finding of deficient performance.  *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997).

The record shows that petitioner=s trial counsel joined or executed objections to the application of the felony murder statute on other grounds in a motion to quash the indictment and a motion for a directed verdict.  *Loredo v. State*, 14-00-01353-CR, Reporter=s Record Volume 2 at 2, 21-38; Volume 19 at 33-36.  Counsel=s failure to raise a meritless objection is not ineffectiveness of counsel; it is the very opposite.  *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994).  Accordingly, petitioner fails to overcome the state habeas court=s finding that petitioner=s failure to object did not amount to constitutionally ineffective assistance of counsel.

### b. Failure to Argue Application of Felony Murder in Closing Statement

Petitioner complains that A[i]n closing arguments Petitioner=s attorney=s ignorance of felony murder doctrine became evident@ because trial counsel Rodriguez did not tell the jury Athe State was required to prove beyond a reasonable doubt that the homicide ocurred [sic] during the commission  of burglary of a building as the indictment alleged.@ (Docket Entry No.3 at 22).  The state habeas courts found that petitioner failed to show that his trial counsel=s closing argument was deficient or prejudicial.  *Ex parte Loredo*, Application No. 63,613-01 at 73.

The record shows that petitioner=s trial counsel correctly stated the elements of felony murder in his closing argument.  *Loredo v. State*, No.14-00-01353-CR, Reporter=s

Record Volume 20 at 28-29.   The record also shows that Attorney Rodriguez argued that although the evidence showed that petitioner burgled the McDonald=s restaurant, it did not show that petitioner engaged in the dangerous conduct of starting the fire or that he was a party to such act.   *Id.* at 29-30.   Rodriguez invited the jury to consider finding petitioner guilty of a lesser offense.   *Id* at 30.   Without more, petitioner fails to overcome the state habeas courts= finding that trial counsel=s performance during closing argument was not deficient or prejudicial.

### 2. Admission of Excluded Expert Testimony

Petitioner next complains that trial counsel Rodriguez rendered a deficient performance because he did not object to the introduction of expert testimony by David Reiter, Victor Watson, and John Burton, after the state district court issued an order excluding experts designated less than twenty days before trial.   (Docket Entries No.1, No.3, No.13).   Petitioner complains that the testimonies of experts Reiter, Watson, and Burton were explicitly excluded by the state district court=s explicit ruling and by Article 39.14(b)[2] of the Texas Code of Criminal Procedure.   (Docket Entry No.13).   Petitioner complains that as a result of the testimony of the State=s experts, the prosecutor argued before the jury that defendants could have presented experts to contravene the testimony of the State=s experts.   (Docket Entry No.3).

The state habeas courts found that petitioner Afailed to overcome the presumption that trial counsel=s decision not to object was made in the exercise of reasonable professional

---

[2]

Article 39.14(b) provides that on the motion of a party and with notice to all parties, the court in which an action is pending may order the parties to disclose the name and address of each person the other party may use at trial as an expert witness.  In such case, the court shall specify the time and manner in which the other party must make the disclosure to the moving party, but in specifying such time, the court shall require such disclosure no later that twenty days before the date the trial begins.  TEX. CODE CRIM. PROC. ANN. art. 39.14(b) (Vernon 2005).

judgment, and the applicant fails to meet his burden in showing that his attorney was ineffective for failing to object.@ *Ex parte Loredo*, Application No.63,613-01 at 73; No.63,613-02 at 73.

The record reflects that on June 30, 2000, petitioner=s trial counsel filed a motion for discovery pursuant to Article 39.14 of the Texas Code of Criminal Procedure. *Loredo v. State*, No.14-00-01353-CR, Clerk=s Record at 32-34. On July 10, 2000, the state district court held a hearing on defendants= discovery motions and other motions. *Loredo v. State*, No.14-00-01353-CR, Reporter=s Record Volume 2. Attorney Osso, who represented one of petitioner=s co-defendants, indicated that each defendant had filed their own discovery motion. *Id.* at 3. After hearing Osso=s motion, the state district court agreed that the prosecution and defense could identify expert witnesses no later than seven days before trial. *Id.* at 18, 21. The State district court then heard the discovery motion of Attorney Brown, who represented petitioner=s brother. *Id.* at 38-50. Petitioner=s trial counsel was not present at the hearing on the discovery motions. Therefore, petitioner=s discovery motion was not heard by the state district court. Consequently, the state district court did not enter a ruling on petitioner=s AMotion for Discovery Based on 39.14 CCP and State and Federal Law.@ *Id.* at 59-60.

On August 15, 2000, David Reiter testified at a *Daubert*[3] hearing that he was an electrical engineer and part owner of Varitec Forensic Engineering. *Loredo v. State*, No.14-00-01353-CR, Reporter=s Record at 79-80. Reiter testified to the electrical system in the restaurant. *Id.* at 79-102. Following his testimony, Attorney Osso, counsel for a co-defendant, cross-designated all of the State=s experts as his experts. *Id.* at 102-03. Osso explained, AWhat I=m getting at is under the new rules I=m required and they=ve asked notice of who I may call as an

---

[3]

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

expert and I=m simply telling them I want to cross designate all of their people that they=ve designated as experts.  I don=t want to be in a position that I can=t call them because I haven=t named them as a witness.@  *Id.* at 103.  The prosecutor indicated that defendants had been given written notice of the State=s intent to call Reiter as an expert and that Reiter had been subpoenaed.  *Id.* at 103-04.  The parties and court agreed that Osso did not have to give written notice of his designation of this witness in this instance.  *Id.* at 104.          On August 21, 2000, three days before trial, the prosecutor complained to the state district court following a hearing on a motion *in limine* that it had just received notice from the defense regarding five or six expert witnesses that they planned to call.  *Id.,* Volume 9 at 15.  Attorney Osso explained that he sent notices on behalf of all defendants regarding rebuttal experts in the areas of fire safety, lightweight truss construction, roof collapse and fire-spread.  *Id.* at 15-16, 18.  Osso further explained that he had been diligent in reviewing the State=s file but was unaware that the wood truss construction in the ceiling of the McDonald=s restaurant presented a problem for firefighters until the State presented a model to the state district court at a hearing the week before, presumably at the *Daubert* hearing.  *Id.* at 20.  Thereafter, Osso stated, he found experts and gave notice to the State of his intent to use them.  *Id.*  Attorney Brown, trial counsel to another co-defendant, indicated that defendants did not receive notice of the State=s intent to call Reiter until August 2, 2000, nineteen days before trial.[4]  *Id.* at 17.  Attorney Osso indicated that the late-noticed experts that he designated dealt with lightweight truss construction and fire spread; Attorney Brown indicated that Reiter=s testimony also dealt with truss construction.  *Id.* 17-18.  The prosecutor, however, indicated that Reiter was an electrician technician licensed in

---

[4]  The record reflects that the State also gave notice of its intent to call firefighters Victor Watson and John Burton to defendants on August 2, 2000.  *Loredo v. State*, No.14-00-01354-CR, Clerk=s Record at 30.

electrical appliances.  *Id.* at 18.  After more discussion, the state district judge resolved the issue as follows: AWell, I can do this.  I can either say any expert designated 20 days before trial gets to testify. . . Well, that=s the rule if they=re not designated at least 20 days beforehand you don=t get to use them.@  *Id.* at 20-21.

The record, however, reflects that the State presented, without objection, the testimony of Reiter, Burton, and Watson even though they had not been designated within the twenty day window.

### a. David Reiter

Petitioner complains that the testimony of David Reiter was highly prejudicial because through him, the State sought to disprove the defense=s theory that the cause of the fire could have been accidental.  (Docket Entry No.3).

Reiter testified that he was employed by the insurance carrier for the McDonald=s restaurant to evaluate whether there were any problems with the electrical system.  *Id.* Volume 18 at 162-63.  Reiter opined that Athere was no electrical malfunction of either the electrical branch circuit or the electronic appliances that would have been a causal for this fire.@  *Id.* at 181.  Attorney Rodriguez, petitioner=s trial counsel, briefly questioned Reiter as to whether he prepared a written report.  *Id.* at 181-82.  Attorney Osso did not question Reiter.  *Id.* at 181.  Attorney Brown, counsel for a co-defendant, questioned Reiter about the few instances of short circuiting in some of the restaurant=s wiring.  *Id.* at 185-89.  Reiter conceded that he could not tell whether there were specific problems with the equipment from the physical evidence.  *Id.* at 189.  Brown pressed and Reiter further conceded that he could not with 100 per cent certainty state that there was no secondary fire cause by electrical problems in the restaurant.  *Id.* at 199. The defense did not proffer any expert to contravene Reiter=s testimony.

In light of the prosecution=s nineteen day notice of its intent to call Reiter as an expert witness, Reiter=s testimony at the *Daubert* hearing, Osso=s request to designate Reiter as a defense witness at the *Daubert* hearing, and the failure to obtain a ruling on the Article 39.14 motion, petitioner fails to show that an objection to Reiter=s testimony at trial on the ground that such testimony violated article 39.14(b) of the Texas Court of Criminal Procedure or violated the state district court=s previous ruling would have been successful.  Furthermore, given Reiter=s concessions at trial, petitioner fails to show that he was prejudiced by Reiter=s testimony or Rodriguez=s failure to object to the admission of such testimony.  Accordingly, he fails to overcome the state district court=s finding that the failure to object was not reasoned trial strategy and that Rodriguez rendered constitutionally effective assistance of counsel.

### b. John Burton

Petitioner maintains that the testimony of John Burton was highly prejudicial because through his testimony, the State sought to prove that fire was a deadly weapon and that it could be used to cause serious bodily injury or death.  (Docket Entry No.3).  Petitioner also complains about Burton=s testimony concerning the reasonableness of the fire-department=s Afast-attack@ on the fire, which contravened the defense=s theory that the method of attacking the fire led to the deaths of the two firefighters.  (*Id*.).  Respondent maintains that Burton testified as a fact witness and therefore, his disclosure was not required by Article 39.14(b), which provides for the admission of expert testimony, or by the state district court=s ruling.

Under Texas law, both lay and expert witnesses can offer opinion testimony.  As a general rule, observations which do not require significant expertise to interpret and which are not based on a scientific theory can be admitted as lay opinions if the requirements of Rule 701 of the Texas Rules of Evidence are met.  *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App.

2002).  Rule 701 addresses a witness who Awitnessed@ or participated in the events about which

he or she is testifying.  TEX. R. EVID. 701.  To determine whether testimony falls within the

parameters of Rule 701, a court must decide whether the opinion is rationally based on

perceptions of the witness and whether it is helpful to a clear understanding of witness=s

testimony or to determine a fact in issue.  *Id.*; *Fairow v. State*, 943 S.W.2d 895, 897 n.4 (Tex.

Crim. App. 1997).

       The record reflects that Burton testified to his experience as a firefighter and as a

participant and witness to the McDonald=s fire; therefore, he testified as a fact witness under

Rule 701.  Specifically, the record shows that the prosecutor asked Burton whether during the

course of his thirty-three years as a firefighter he could tell what types of injuries that he had

seen that firemen have been involved in.  *Loredo v. State*, No.14-00-01353-CR, Reporter=s

Record, Volume 16 at 45.  Attorney Brown, counsel for a co-defendant, objected as being

outside the scope of the case.  *Id.*  The prosecutor responded that A[w]e have to prove that injury

was caused by the fire and the defense is that it was caused by the air conditioning and

lightweight truss and I=m going to show that injuries are caused by fire.  That is part of the

indictment and I think rebuttal to it [sic]  part of our defense talked about other things, that

lightweight truss.@  *Id.*  The Court sustained the objection.  *Id.* at 46.  The prosecutor then asked

whether Burton had an opinion as to whether fire is a deadly weapon.  *Id.*  Brown objected that

the question called for speculation and invaded the province of the jury.  *Id.*  The prosecutor

responded, AJudge[,] I don=t know how I can=t prove it.  I have to prove it through witnesses

and I think he=s a witness that=s been a firefighter for 33 years.  He would be the best person to

know.@  *Id.*.  The court sustained the objection.  The prosecutor then queried, ABased on your

experience Chief Burton can fire, depending on its manner of use be capable of causing death or

serious bodily injury?@  *Id*. at 46-47.  Brown renewed his objection.  *Id*.  The court overruled the objection, the prosecutor repeated the question and Brown objected again.  *Id*.  The court overruled the objection.  *Id*.  Burton testified that in his opinion fire could be used Aas something to cause bodily injury and death.@  *Id*. at 48.  When the prosecutor asked if lighting a fire in a vacant building was capable of causing serious bodily injury or death, Brown requested a running objection and the court sustained the objection.  *Id.*

Burton also testified to his participation in fighting the McDonald=s fire when he explained why a fast attack was appropriate and why firefighters eventually had to fight a defensive fire in the restaurant.  *Id.* at 54; 64-67.  He further described the events that led up to the discovery of the bodies of the two firefighters.  *Id.* at 76-85.

Because Burton testified as a lay witness, the twenty day requirement of Article 39.14(b) and the state district court=s ruling with respect to designated experts did not preclude the admission of his testimony to the extent that the prosecutor did not timely disclose him as a witness.  Furthermore, Attorney Rodriguez aggressively cross-examined Burton regarding the manner in which firefighters fought the fire and searched for the two firefighters lost in the burning restaurant.  *Id.* at 90-106.  Based on this record, petitioner fails to overcome the state habeas court=s finding that Rodriguez=s failure to object to the exclusion of Burton=s testimony as a witness under article 39.14(b) of the Texas Court of Criminal Procedure was reasoned trial strategy.

### c. Victor Watson

Petitioner does not indicate how he was prejudiced by Watson=s testimony or how his trial counsel=s failure to object to Watson=s testimony prejudiced him.  Accordingly, he

fails to show that he was denied the effective assistance of counsel with respect to his trial counsel=s failure to object to Watson=s testimony.

Accordingly, petitioner fails to show that he was denied a fair trial and the effective assistance of counsel by the admission of the testimony of three State witnesses and his counsel=s failure to object that they should be excluded under court order and state procedure.

### 3. Denial of Counsel during Critical Phase of Trial

Finally, petitioner contends Attorney Rodriguez=s absence from the pre-trial hearing, in which the parties and state district court addressed discovery motions and a motion to quash the indictment, deprived him of counsel at a critical stage of the prosecution=s case and therefore failed to subject the prosecution=s case to a meaningful adversarial testing.  (Docket Entry No.3).  Petitioner further contends because he was effectively denied counsel at the hearing, prejudice should be presumed.  (*Id.*).

The Sixth Amendment mandates the right to counsel at every critical stage of the proceedings against an accused unless such right is waived.  *McConnell v. Rhay*, 393 U.S. 2 (1968).  Prejudice is presumed Awhen counsel [is] either totally absent, or prevented from assisting the accused during a critical stage of the proceeding.@  *United States v. Cronic*, 466 U.S. 648, 659 n.25 (1984).  Prejudice is also presumed when the circumstances surrounding a trial prevent a petitioner=s attorney from rendering effective assistance of counsel.  *Id.* at 659-660.

Whether a particular part of the trial process is a Acritical stage@ is determined not by whether the defendant suffered prejudice by the absence of effective assistance of counsel during that part of the proceedings, but rather, whether >the substantial rights of a defendant may be affected= during the proceeding.  *Burdine v. Johnson*, 262 F.3d 336, 347 (5th Cir. 2001).

In this case, petitioner complains that his attorney=s absence from a pre-trial hearing on defendants=s discovery motions, a co-defendant=s motion to sever, and a joint motion to quash the indictment deprived him of presenting arguments and objections to the state district court and raising objections regarding the same on direct appeal.  (Docket Entries No.1, No.3, No.13).  Petitioner, however, does not indicate what objections he would have raised on direct appeal with respect to the issues raised and discussed at this pretrial hearing or what substantial rights were affected at the hearing with respect to the motions addressed.  Moreover, the record reflects that the issues raised and considered at the pretrial hearing during Attorney Rodriguez=s absence were largely uncontroversial.  *Loredo v. State*, No.14-00-01353-CR, Reporter=s Record, Volume 2 at 3-57.  Therefore, petitioner fails to show that he was denied counsel at a critical stage of the trial by his attorney=s absence at this pretrial hearing.

Likewise, petitioner fails to show that his trial counsel failed to subject the prosecution=s case to a meaningful adversarial testing by his absence at the pretrial hearing. Routine complaints about the performance of defense counsel at various stages of a trial do not fall into this category of exceptional circumstances warranting a presumption of prejudice under *Cronic. Bell v. Cone,* 535 U.S. 685, 696-697 (2002).  Prejudice is presumed only if an attorney completely fails to test the prosecutor=s case. *Id.* at 698.  Here, petitioner complains that his trial counsel was absent from a pre-trial hearing on a discovery motion; he does not contend that Rodriguez failed to test the prosecutor=s entire case and the record does not support such a showing.

Therefore, to prevail on this ineffective assistance of counsel claim, petitioner must establish both that his trial counsel rendered professionally deficient performance and that he was prejudiced. *Strickland*, 466 U.S. at 688, 694.  Petitioner has alleged no specific facts nor

furnished any evidence to satisfy the prejudice standard.  Accordingly, petitioner fails to show that his trial counsel rendered constitutionally ineffective assistance of counsel by his absence at a pretrial hearing on discovery motions.

Without more, petitioner fails to show that the state habeas court=s application of the *Strickland* standard was objectively unreasonable.

### D. Admission of Extraneous Offenses During Punishment Phase of Trial

Finally, petitioner maintains that the state district court erred during the punishment phase of trial by admitting his pre-recorded confession to three extraneous offenses. (Docket Entries No.1, No.3, No.13).  The Fourteenth Court of Appeals summarized evidence given at a suppression hearing with respect to the confession, as follows, in pertinent part:

> The day after appellant made his initial statement, Officer Colleen Nelson of the Houston Police Department interviewed him.  After Officer Nelson read appellant his rights, the following exchange took place.
>
> *Officer Nelson:*  It=s 5:00 o=clock in the morning is when the robbery occurs.  I want to know what you have to say about it. While you say anything I want you to understand this is your opportunity to tell me your part in it, what you had to do with it. An hour from now if you change your mind, an hour from now if you want to talk to me about it again it=s too late.  This is your chance to tell me what you had to do with the robbery, okay.
>
> *Appellant:*  Can I ask for a lawyer now?
>
> *Officer Nelson:*  You bet.  You bet.  You certainly can.  And when you ask for a lawyer that means I=m not going to talk to you anymore, okay.  I=m not going to talk to you anymore about this. I=m going to take you back to the jail just exactly where I got you.
>
> *Appellant:*  What are we charged for right now?
>
> Appellant then proceeded to discuss the offense with Officer Nelson.

> The trial court made the following findings with regard to appellant=s motion to suppress:
>
> The next day, Officer Colleen Nelson of the HPD Robbery Division, took Loredo out of the city jail for the purpose of interviewing him about robberies that had occurred at McDonald=s restaurants.  She conducted the interview on videotape and warned Loredo of his rights under Article 38.22 at the beginning of the tape.   He understood those warnings, and although he asked generally about a lawyer, he did not invoke any of his rights.
>
> No one threatened Loredo or coerced him to make a statement, and no one promised him anything to induce him to make a statement.  His audio- and video-recorded statements were made voluntarily and are admissible in evidence.

*Loredo*, 130 S.W.3d 275, 284 (Tex. App.BHouston [14th Dist.] 2004, pet. ref=d).

The Fourteenth Court of Appeals concluded that petitioner=s Aquestion about a lawyer was not an unambiguous invocation of his right to counsel,[5] and was followed by appellant=s continuation of the interview.@  *Id.* at 285.  Relying on *Miranda v. Arizona,*[6] *Davis v. United States,*[7] and *Minnick v. Mississippi,*[8] the intermediate state appellate court found that the state district court did not err admitting petitioner=s confession to three extraneous offenses during the punishment phase of trial.   *Id.*   The Texas Court of Criminal Appeals refused petitioner=s petition for discretionary review.

Petitioner contends the Fourteenth Court of Appeals erred because it did not reach the issue of whether Officer=s Nelson=s reply rendered the subsequent waiver of assistance of

---

[5]

*Compare Alvarez v. Gomez,* 185 F.3d 995, 998 (9th Cir. 1999) (holding the following three questions constitute an unequivocal invocation of the right to counsel: ACan I get an attorney right now, man?@ AYou can have an attorney right now?  AWell, like right now you got one?@).

[6]   384 U.S. 436, 467-68 (1966).

[7]   512 U.S. 452, 459 (1994).

[8]   498 U.S. 146, 151-52 (1990).

counsel involuntary.  (Docket Entry No.3).  Petitioner contends that Nelson did not ignore his waiver of counsel but directly responded to his invocation of counsel.  (*Id.*).  Petitioner maintains that Officer Nelson=s response, that she would take petitioner back to jail if he wants a lawyer, coerced and intimidated him to waive the right.  (*Id.*).  The Fourteenth Court of Appeals, however, found that Officer=s Nelson=s response to petitioner=s question regarding counsel was not threatening nor coercive.  *Loredo*, 130 S.W.3d at 284.

The record and case law supports the findings of the state courts.  Supreme Court precedent holds that A[i]f the suspect effectively waives his right to counsel after receiving the *Miranda* warnings, law enforcement officers are free to question him. . . . But if a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation.@  *Davis v. U.S.*, 512 U.S. 452, 458 (1994) (citations omitted).  The suspect, however, Amust unambiguously request counsel.@  *Id.* at 459.  An unambiguous and unequivocal request is one in which the suspect articulates Ahis desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.@  *Id.*  Law enforcement officers are not required to cease questioning immediately if the suspect makes an ambiguous or equivocal reference to an attorney.  *Id.*  Furthermore, the investigator conducting the questioning has no obligation to attempt to clarify the ambiguous comment of the accused.  *Id*. at 460.

The record reflects that Officer Nelson honored petitioner=s question, ACan I ask for an attorney now,@ by assuring him that he could request counsel.  Moreover, she informed him that she could not talk to him and that she would take him back to jail.  *Loredo v. State*, No.14B00-1353-CR, Reporter=s Record, Volume 22 at 15-16.  Thereafter, petitioner reinitiated

the conversation by questioning her about his current charge.  *Id*. at 17.  Petitioner=s question was sufficient to waive counsel.

Accordingly, petitioner fails to show that the state appellate courts= finding that his confession to the three extraneous offenses was admissible during the punishment phase of trial violated established Supreme Court precedent or constituted an unreasonable determination of the facts in light of the evidence presented in state court.

<u>IV. CERTIFICATE OF APPEALABILITY</u>

A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes Aa substantial showing of the denial of a constitutional right.@ 28 U.S.C. ' 2253(c)(2).  This standard Aincludes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.@ *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted).  Stated differently, the petitioner Amust demonstrate that reasonable jurists would find the district court=s assessment of the constitutional claims debatable or wrong.@  *Id.*; *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001).  On the other hand, when denial of relief is based on procedural grounds, the petitioner must not only show that Ajurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right,@ but also that they Awould find it debatable whether the district court was correct in its procedural ruling.@  *Beazley*, 242 F.3d at 263 (quoting *Slack*, 529 U.S. at 484); *see also Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000).  A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).  The Court has determined that petitioner has not made a

substantial showing of the denial of a constitutional right.   Therefore, a certificate of appealability from this decision will not issue.

## V. CONCLUSION

Finding no unreasonable application of clearly established federal law nor an unreasonable determination of the facts in light of the evidence presented in state court, the Court ORDERS the following:

1.  Respondent=s motion for summary judgment (Docket Entry No.10) is GRANTED.

2.  Petitioner=s claims against respondent are DISMISSED, with prejudice.

3.  A certificate of appealability is DENIED.

4.  All pending motions, if any, are DENIED.

The Clerk will provide a copy to the parties.

Signed at Houston, Texas, on this 23rd day of August, 2007.

Melinda Harmon
United States District Judge